**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

---

| | |
|---|---|
| In re: | ) |
| | ) |
| Bank of New England Corporation, | ) Case No. 91-10126 (WCH) |
| | ) (Chapter 7) |
| Debtor. | ) |
| | ) |
| HSBC Bank USA, National Association, | ) |
| as Indenture Trustee and as Successor | ) |
| Indenture Trustee to JPMorgan Chase Bank | ) |
| f/k/a The Chase Manhattan Bank, as | ) No. 09-cv-10829 (JLT) |
| Indenture Trustee, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| Bank of New York Trust Company, | ) |
| National Association, as Indenture Trustee, | ) |
| and U.S. Bank, National Association, as | ) |
| Indenture Trustee, | ) |
| | ) |
| Appellees, | ) |
| | ) |
| and | ) |
| | ) |
| Bank of New England Corporation, Dr. | ) |
| Ben S. Branch, Chapter 7 Trustee. | ) |

**APPELLANT'S REPLY BRIEF**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 3

I.    THE FIRST CIRCUIT HELD THAT THE "RULE OF EXPLICITNESS" WAS
      A DEAD LETTER AND ITS DICTA FOOTNOTE ABOUT THE BACKDROP
      OF BANKRUPTCY LAW DID NOT CHANGE THAT HOLDING ........................... 3

      A.    The Bankruptcy Court's Decision Is Contrary to the First Circuit's
            Mandate and Violates Section 510(a) of the Code ................................. 3

      B.    The Bankruptcy Court Incorrectly Applied a "Presumption" to Reach the
            Desired Result: Application of the "Rule of Explicitness" ...................... 5

            1.    The Junior Trustees Disregard the First Circuit's Direction that the
                  Application of any Presumption Concerning the Law in Effect is
                  Uncertain Absent Further Factfinding ........................................ 5

            2.    The Junior Trustees and Bankruptcy Court Misconstrue the Law
                  Underlying the So-Called Presumption ...................................... 7

II.   THE BANKRUPTCY COURT FAILED TO CONSIDER RELEVANT
      EVIDENCE AND FAILED TO FOLLOW ESTABLISHED NEW YORK LAW
      GOVERNING AMBIGUOUS CONTRACTS .................................................... 12

      A.    The Bankruptcy Court Found the "Factual Evidence" Unavailing and
            Found that the Junior Trustees did not Meet their Burden Of Showing A
            Custom and Practice ......................................................................... 13

      B.    In Considering the Evidence, The Bankruptcy Court (and the Junior
            Trustees) Conflate the Issues of Intent and Legal Enforceability and Ignore
            Evidence Going to the Question of Intent............................................. 15

      C.    Alternatively, Under New York Law, If the Extrinsic Evidence is Not
            Helpful then the Matter Becomes a Question of Law Which Required the
            Factfinder to Reexamine the Plain Meaning and Construe the Contract
            Against the Drafters ......................................................................... 17

            1.    New York Law is Clear: If the Extrinsic Evidence Does Not
                  Resolve the Ambiguity, then the Question Becomes One of Law .......... 17

            2.    The Bankruptcy Court Erred by Failing to Apply the Contra
                  Proferentem Rule ................................................................ 19

            3.    The Subordination Provisions Should Have Been Given Their
                  Plain Meaning Consistent With the Whole Contract........................ 23

CONCLUSION..................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*2 Tudor City Place Associates v. 2 Tudor City Tenants Corp.,* 924 F.2d 1247 (2d Cir. 1991) ...................................................................................................9

*67 Wall Street Co. v. Franklin National Bank*, 37 N.Y.2d 245 (1975)...........................22

*Albany Sav. Bank, FSB v. Halpin,* 117 F.3d 669 (2d Cir. 1997) .....................................21

*Americorp Sec. v. Sager*, 656 N.Y.S.2d 762 (N.Y. App. Div. 1997) ...............................22

*Aviation Development Co. PLC v. C&S Acquisition Corp.,* No. 97 Civ. 9302, 1999 WL 46630 (S.D.N.Y. Feb. 2,1999).....................................................19

*Barnhardt v. Hudson Valley District Counsel of Carpenters Benefit Funds*, 494 N.Y.S.2d 667 (N.Y. App. Div. 1985) ..........................................................23

*Boston Car Co., Inc. v. Acura Automobile Division, America Honda Motor Co., Inc.,* 971 F.2d 811 (1st Cir. 1992)...............................................................12

*Bridge Capital Investors, II v. Susquehanna Radio Corp.,* 458 F.3d 1212 (11th Cir. 2006) .................................................................................................9

*Broad v. Rockwell Intern. Corp.,* 642 F.2d 929 (5th Cir. 1981).......................................21

*Brown v. Utica Mutual Insurance Co.,* 53 N.Y.S.2d 760 (Sup. Ct. 1945) ........................9

*Chase Manhattan Bank, N.A. v. American National Bank & Trust Co. of Chicago,* 93 F.3d 1064 (2d Cir.1996)..........................................................................19

*Chevron TCI, Inc. v. Talleyrand Associate, LLC,* No. 03 Civ. 4043, 2003 WL 22977498 (S.D.N.Y. Dec. 19, 2003) ..................................................19

*DaPuzzo v. Globalvest Management Co., L.P.,* 263 F. Supp. 2d 714 (S.D.N.Y 2003) ...................................................................................................22

*Dinerman v. National Bank of North America,* 390 N.Y.S.2d 1002 (Sup. Ct. 1977) .....................................................................................................8

*Dolman v. U.S. Trust Co.,* 2 N.Y.2d 110, 157 N.Y.S.2d 537, 138 N.E.2d 784 (N.Y.Sup.Ct. 1956) ..................................................................................5, 8

*E.R. Squibb & Sons, Inc. v. Lloyd's & Companies, et al.,* 241 F.3d 154 (2d Cir. 2001) ...............................................................................................12

*Gel System Inc. v. Hyundai Engineering & Construction Co., Inc.,* 902 F.2d 1024
(1st Cir. 1990) ...................................................................................................12

*In re Avon Sec. Litigation*, No. 91 Civ. 2287, 2004 WL 3761563 (S.D.N.Y.
March 29, 2004)........................................................................................... 18-19

*In re Bank of New England Corp.,* 364 F.3d 355 (1st Cir. 2004)............................. *passim*

*In re Carp*, 340 F.3d 15 (1st Cir. 2003) ..........................................................................12

*In re Delta Air Lines, Inc.,* 381 B.R. 57 (Bankr. S.D.N.Y. 2008) ....................................23

*In re Enron Creditors Recovery Corp.,* 380 B.R. 307 (S.D.N.Y. 2008)..............................4

*In re Envirodyne Industrial, Inc.,* 161 B.R. 440 (Bankr. N.D. Ill. 1993) .........................10

*In re King Resources Co.,* 385 F. Supp. 1269 (D. Colo. 1974), *aff'd* 528 F.2d 789
(10th Cir. 1976).............................................................................................7, 8, 16

*In re Kingsboro Mortgage Corp.*, 514 F.2d 400 (2d Cir. 1975)...............................7, 8, 16

*In re Meyer*, 331 B.R. 794 (Bankr. E.D.Wis. 2005) ........................................................21

*In re Time Sales Finance Corp.,* 491 F.2d 841 (3d Cir. 1974) ................................7, 8, 16

*In the Matter of Envirodyne Industrial, Inc.,* 29 F.3d 301 (7th Cir. 1994)................... 9-10

*Jeanette Coquette & Co., Inc. v. J.P. Original Corp.*, No. CV-92-5266, 1995 WL
313142 (E.D.N.Y. May 18, 1995) ...............................................................22

*Lazard Freres & Co. v. Protective Life Insurance Co.,* 108 F.3d 1531 (2d Cir.
1997) ...............................................................................................................20, 23

*Metropolitan West Asset Management v. Magnus Funding, Ltd.,* No. 03 Civ.
5539, 2004 WL 1444868 (S.D.N.Y. June 25, 2004) ...............................20, 22

*Morgan Stanley & Co., Inc. v. Archer Daniels Midland Co.,* 570 F. Supp. 1529
(S.D.N.Y. 1983) ................................................................................................21

*Morgan Stanley Group Inc. v. New England Insurance Co.,* 225 F.3d 270 (2d Cir.
2000) ...............................................................................................................20

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660 (2d Cir.
1996) ...........................................................................................................22, 23

*Ocean Rig ASA v. Safra National Bank of New York*, 72 F. Supp. 2d 193 (S.D.N.Y. 1999) ..............................................................................21, 23

*Ott v. Ott*, 698 N.Y.S.2d 137 (App. Div. 1999) ...................................................9

*Pacifico v. Pacifico*, 190 N.J. 258 (N.J. 2007) ..................................................22

*Rottkamp v. Eger*, 346 N.Y.S.2d 120 (N.Y. Sup. Ct. 1973) .............................22

*Schwartz v. Natwest Markets, PLC,* No. 99 CIV. 11010, 2001 WL 1006727 (S.D.N.Y. Aug. 31, 2001) .............................................................................20

*Skandia America Reinsurance Corp. v. Schenck*, 441 F. Supp. 715 (S.D.N.Y. 1977) ...........................................................................................................8

*State of Rio de Janeiro v. E.H. Rollins & Sons, Inc., et al.,* 64 N.Y.S.2d 230 (Sup. Ct. 1946) ...........................................................................................11

*Time Warner Entertainment Co., L.P. v. Brustowsky*, 634 N.Y.S.2d 82 (App. Div. 1995) .................................................................................................5, 9

*Tom Doherty Associate Inc. v. Saban Entertainment Inc.,* 869 F. Supp. 1130 (S.D.N.Y. 1994) .....................................................................................19, 23

*Union Insurance Society of Canton, Ltd. v. William Gluckin & Co.,* 353 F.2d 946 (2d Cir. 1965) .............................................................................................22

*Uniroyal, Inc. v. Home Insurance Co.,* 707 F. Supp. 1368 (E.D.N.Y. 1988) ....................12

*United Rentals (North America), Inc. v. Keizer*, 355 F.3d 399 (6th Cir. 2004) ................21

## STATUTES

11 U.S.C. § 510(a) .......................................................................................3, 4, 9

## OTHER MATERIALS

11 Williston on Contracts § 30:7 (4th Ed. 2009) ..............................................17

11 Williston on Contracts § 30:19 (4th Ed. 2009) ..............................................6

11 Williston on Contracts § 32:7 (4th Ed. 2009) ..............................................19

HSBC Bank USA, National Association, formerly Marine Midland Bank, N.A., as Indenture Trustee for the 7 5/8% Debentures, and as Successor Indenture Trustee to JPMorgan Chase Bank f/k/a The Chase Manhattan Bank, for the 8.85% Debentures and the 9 1/2% Senior Notes (the "Senior Trustee"), submits its reply brief on appeal, pursuant to Rule 8010 of the Federal Rules of Bankruptcy Procedure in support of its appeal from the Decision and Order on Remand Regarding the Trustee's Motion for Order Authorizing A Fourth Interim Distribution.

## PRELIMINARY STATEMENT

The Junior Trustees'[1] opposition brief is most striking for its failure to explain why the Bankruptcy Court's finding of a "rule of explicitness" under New York State law is not completely at odds with the First Circuit's decision in this very case that there is no "Rule of Explicitness" under the Bankruptcy Code and no doctrine of explicitness under New York law. The Junior Trustees admit that to reach its decision the Bankruptcy Court had to "narrowly construe" the First Circuit's decision and conclude that the First Circuit's *holding* of no "Rule of Explicitness" under New York law was *dicta*. The Junior Trustees argue that the ruling below is consistent with the legal presumption, acknowledged by the First Circuit, that parties to a contract intend the contract to be construed in accord with the law in force at the time. However, the First Circuit stated that the "effect of that tenet is uncertain absent further factfinding." *In re Bank of New England Corp.*, 364 F.3d 355, 368 n.5 (1st Cir. 2004). Here, the Bankruptcy Court applied the presumption prior to its evaluation of the evidence, and placed the burden of disproving the presumption on the Senior Trustee. In doing so, the Bankruptcy Court placed what the Junior Trustees admit was an "onerous burden" on the Senior Trustee. This is not only at odds with the First Circuit's decision, but also inconsistent with the Bankruptcy Court's own

---

[1]     Capitalized terms uses herein have the same meaning as defined in the Senior Trustee's Appellant's Brief, filed with this Court on July 20, 2009.

pre-trial ruling that each side had to prove its position by a preponderance of the evidence.

Moreover, the Bankruptcy Court was wrong to conclude that there is a "principle of explicitness" under New York law.   That conclusion was based on the finding that interest stops accruing against a debtor on the filing of a bankruptcy.   That is both wrong and beside the point.   Interest accrues on debts until they are paid.   It is simply not payable by the debtor.   But more significantly, under New York law, post-bankruptcy or "post-petition" interest continues to accrue and may be recovered against other parties, such as guarantors or junior creditors who agreed under contracts, like the indentures at issue here, to subordinate their right to payment of interest until the senior creditors are paid in full.

The Junior Trustees' argument that the Bankruptcy Court made findings of fact that the parties to the Junior Indentures did not intend for post-petition interest to be covered by the subordination provisions is false.   The Bankruptcy Court expressly stated that the Junior Trustees' evidence was not conclusive.   Decision at 28-34, 49 n.149 ("all evidence indicates a lack of consistency or uniformity in the drafting of these instruments.").   Rather, the court below ruled for the Junior Trustees because it found the Senior Trustee failed to rebut the (non-existent) presumption under New York law that post-petition interest is not recoverable absent express language in the contract, which went beyond the express language contained in the Junior Indentures here.   Absent the application of that erroneous proposition of law, the Bankruptcy Court should not, and would not, have ruled against the Senior Trustee.

Finally, the Junior Trustees do not rebut the Senior Trustee's showing that the Bankruptcy Court should have applied New York law's doctrine of *contra proferentem* where, as here, there was no testimony from a drafter and the Bankruptcy Court found that the extrinsic evidence was not conclusive.   Here, the subordination provisions should have been construed

against the drafters – the underwriters of the Junior Indentures, who represented the interests of

the Junior Debt – as a matter of law, and the plain language of the words "interest due or to

become due" should have been construed in favor of the holders of Senior Debt who were third

party beneficiaries of the subordination provisions.

## ARGUMENT

I.    **THE FIRST CIRCUIT HELD THAT THE "RULE OF EXPLICITNESS" WAS A DEAD LETTER AND ITS DICTA FOOTNOTE ABOUT THE BACKDROP OF BANKRUPTCY LAW DID NOT CHANGE THAT HOLDING**

### A.    The Bankruptcy Court's Decision Is Contrary to the First Circuit's Mandate and Violates Section 510(a) of the Code

No one disputes that the First Circuit (and the *Southeast Banking* court) held that

there is no federal "Rule of Explicitness," which died in 1978 with the enactment of the

Bankruptcy Code and Section 510(a), based on Section 510(a)'s requirement that subordination

agreements are enforceable "to the same extent that such agreement is enforceable under

applicable nonbankruptcy law."  The First Circuit, instead of stopping there, held that New York

state's "creation of a bankruptcy-only rule of enforcement would outstrip the authority that

Congress conferred (and, thus, upset the equilibrium that section 510(a) was designed to

achieve)."  *In re Bank of New England Corp.*, 364 F.3d at 364-65.  Thus, the "Rule of

Explicitness" is dead as a matter of state law because the rule, even if adopted by a state court,

would still be a bankruptcy-only rule of interpretation.  The Bankruptcy Court, by adopting a

"principle of explicitness" did exactly this:  it adopted a rule of contractual interpretation of

subordination agreements that applies only in bankruptcy.  Indeed, the Bankruptcy Court found

that "under the law of New York, interest on an obligation ceases upon the filing of an

insolvency proceeding of whatever nature by the obligor."  Decision at 26.  Thus, according to

the Bankruptcy Court, if one wanted to deviate from this law, then one would have to expressly

say so.  *See id.* at 26-27.  This is precisely the "Rule of Explicitness," a rule of contractual interpretation of subordination provisions that applies only in bankruptcy.[2]

Unless there is something special and unique about subordination agreements (which would be contrary to section 510(a)'s requirement that they be construed under principles of applicable *non*-bankruptcy law), then guaranties and subordination agreements should be construed similarly, as contracts under New York contract law.  Indeed, the Junior Trustees fail to address recent New York authority holding that "New York does not have any special rules of interpretation for subordination agreements. . . ." *See In re Enron Creditors Recovery Corp.*, 380 B.R. 307, 322 (S.D.N.Y. 2008).  The Junior Trustees spend significant time arguing that subordination agreements, unlike guaranties, do not create "independent" obligations on the part of the junior creditor, but that is wrong and, at any rate, a distinction without merit.  JT Br. at 39-42.[3]  It is wrong because the subordination provisions at issue here, like most subordination provisions, require that the Junior Trustees pay over to the Senior Trustee for the benefit of the holders of the Senior Debt any payments they receive that do not comply with the subordination provisions.  Second, the Junior Trustees' "distinction" lacks merit.  The fact is, the Junior Trustees and the Bankruptcy Court admit that post-petition interest could be paid if the subordination agreement expressly referenced it – and this admission forecloses any argument that post-petition interest "ceases to exist" post-petition.  All that is left is the same old "Rule of Explicitness" legal analysis of whether the language is "explicit" enough to allow post-petition

---

[2]     The Junior Trustees contend that the lower court "was not applying a *per se* rule of any kind," and that application of the presumption was part of a contextual examination of the parties' intent.  JT Br. at 36.  However, the rule was a *per se* rule: the Bankruptcy Court started with the proposition that interest did not accrue and required language to specifically deviate from that rule, without identifying a situation when the rule would not apply.

[3]     "JT Br." refers to the Joint Brief of Appellees The Bank of New York Mellon Trust Company, National Association and U.S. Bank National Association, as Junior Indenture Trustees, filed with this Court on August 17, 2009.

interest, which the First Circuit said is not valid in that it asks the wrong question. *See In re Bank of New England*, 364 F.3d at 361 ("As the litigants and the lower courts have framed the issue, the pivotal question is whether the language of the subordination provisions satisfies the Rule of Explicitness.  We do not agree this is the correct question.").

<div style="margin-left:2em">

**B.      The Bankruptcy Court Incorrectly Applied a "Presumption" to Reach the Desired Result: Application of the "Rule of Explicitness"**

*1.      The Junior Trustees Disregard the First Circuit's Direction that the Application of any Presumption Concerning the Law in Effect is Uncertain Absent Further Factfinding*

</div>

The Junior Trustees attempt to distinguish the "principle of explicitness" created by the Bankruptcy Court from the dead letter "Rule of Explicitness."  They rely exclusively on a footnote in the First Circuit's decision, which provides in its entirety:

> To be sure, the backdrop of bankruptcy may inform the examination into the parties' intent.  *See Dolman v. U.S. Trust Co.*, 2 N.Y.2d 110, 157 N.Y.S.2d 537, 541-42, 138 N.E.2d 784 (N.Y.Sup.Ct. 1956) (noting the presumption "that the parties had [the law in force at the time of agreement] in contemplation when the contract was made," and that the contract generally will be "construed in light of such law").  Here, however, the effect of that tenet is uncertain absent further factfinding. *Cf. Time Warner Entm't*, 634 N.Y.S.2d at 83 (finding a regulatory definition of a term not determinative of its meaning in a contract where proof was adduced indicating that the parties intended an independent meaning).

*In re Bank of New England*, 364 F.3d at 368 n.5.  This footnote, suggesting that "backdrop of bankruptcy" "may" inform the examination, is classic dicta,[4] and does not use the words "Rule of Explicitness" or "principle of explicitness" but instead refers to the backdrop of bankruptcy.

The First Circuit's footnote is clear – any presumption that the law in force applies may not be applicable, and that factfinding is required to determine if it has any effect in

---

[4]      As explained in the Senior Trustee's Opening Brief ("ST Op. Br."), this footnote fits the very definition of dicta in that it is not an affirmative holding and uses equivocal language (the backdrop of bankruptcy "may" inform the examination).  *See* ST Op. Br. at 28-29.

this case.  The Bankruptcy Court skipped this fact-finding step, instead stating "[t]o apply the presumption acknowledged by the First Circuit, I must first identify a substantive *law* in effect at the time the subordination agreements were executed, one for which the agreements do not explicitly provide otherwise, so that I may then presume the parties intended that it be incorporated."  Decision at 23 (emphasis added).[5]  The Bankruptcy Court identified the principle that "interest on an obligation ceases upon the filing of an insolvency proceeding of whatever nature by the obligor."  *Id.* at 26.  Before engaging in any factfinding, the Bankruptcy Court found that "under the applicable New York rules of contract interpretation, the subordination agreements do not provide otherwise, forming a presumption that drafters did not intend for the payment of interest accruing after the commencement of an insolvency proceeding."  *Id.* at 27. While the Bankruptcy Court stated that "this presumption only sets the stage for further inquiry and by no means relieves me of my obligation to conduct 'a contextual examination of the parties' intent . . .,'" *id.*, there was no factfinding to see whether the presumption applied in this instance.  Instead, the Bankruptcy Court gleaned the presumption from legal principles alone, and then used it as a yardstick to weigh the evidence.

The Bankruptcy Court's imposition of a "presumption" is improper for another reason:  earlier in the case, the Bankruptcy Court considered the issue of the burden of proof and held that "[e]ach claimant must show his or her entitlement to the disputed funds by a preponderance of the evidence" and "claimants must recover on the strength of their own title, rather than on the weakness of that of the adversary."  Decision at 18.  The effect of the

---

[5]    The Bankruptcy Court misapplied this rule of contract construction. The "principle that parties are presumed to contract with reference to existing law is generally applied in connection with contract 'construction' (determining the legal effect of a contract) rather than contract 'interpretation' (determining the meaning of words used in a contract)."  11 Williston on Contracts § 30:19 (4th ed. 2009).  As explained *infra*, the Bankruptcy Court and Junior Trustees conflate legal enforceability with what words were intended to mean.

Bankruptcy Court's presumption was to turn the tables on its own burden of proof decision and place a higher burden on the Senior Trustee, a fact the Junior Trustees admit. *See* JT Br. at 12. ("This factual presumption was subject to rebuttal by the Senior Trustee with extrinsic evidence demonstrating that the parties intended otherwise. . ."). Under the Bankruptcy Court's framing of the law, it found that the Junior Trustees prevailed because the Senior Trustee did not overcome a presumption, directly contrary to the court's decision on burden of proof which prohibited a party from recovering "on the weakness . . . of the adversary." Decision at 18.

> 2.     *The Junior Trustees and Bankruptcy Court Misconstrue the Law Underlying the So-Called Presumption*

Not only was the "presumption" concerning the law in effect applied without any factfinding, the Bankruptcy Court was wrong about the law in effect at the time itself. The presumption that existing law is incorporated into a contract applies to "*valid* applicable laws existing at the time of the making of a contract." 11 Williston on Contracts § 30:19 (4th ed. 1999) (emphasis added). The three 1970's cases – *Time Sales, Kingsboro,* and *King Resources* – did not consider the words "interest due or to become due" that are found in the Junior Indentures here, because the indentures in those earlier cases only involved the phrases "paid in full" or "payment in full."[6] Those cases could not be the "law in force at the time" with respect to an indenture with the different language containing the very words the First Circuit found ambiguous and remanded for trial – "interest due or to become due." ST Op. Br. at 34-35.

The Bankruptcy Court erroneously held that the language in the *Kingsboro Mortgage* indentures – "shall first be paid in full" – was "identical to that now before [the

---

[6]     *See In re King Resources Co.*, 385 F. Supp. 1269, 1274 (D. Colo. 1974) (considering indenture language that provided that senior indebtedness was entitled to receive "payment in full" prior to junior debt), *aff'd* 528 F.2d 789 (10th Cir. 1976); *In re Time Sales Fin. Corp.,* 491 F.2d 841, 842 (3d Cir. 1974) (indenture language provided that senior debt "shall be paid in full before any payment is made" on junior debt); *In re Kingsboro Mortgage Corp*., 514 F.2d 400, 401 (2d Cir. 1975) (language provided that senior debt "shall first be paid in full" before payment to junior debt).

Bankruptcy Court]." Decision at 44. Incredibly, the Junior Trustees' response to this argument seems to be that "interest due or to become due" is "functionally identical" to "paid in full" because they were both "ambiguous." JT Br. at 19 n.22. This makes no sense. First, the three 1970's cases did not find ambiguity, but, rather, found non-explicitness and thus, no legal entitlement to post-petition interest. *See King Resources*, 385 F. Supp. at 1281, *Time Sales*, 491 F.2d at 844-45, *Kingsboro*, 514 F.2d at 401. Clearly, language can be non-explicit, but still not ambiguous, a fact that the Junior Trustees ignore. Second, the language considered in the 1970's cases is different. The subordination provisions in the Junior Indentures add the phrase "due or to become due" following the word interest, language the three 1970's cases did not have. Thus, the Junior Trustee's argument that "paid in full . . . including . . . interest due or to become due" is the same as merely "paid in full" requires the conclusion that "due or to become due" is surplusage. As the Bankruptcy Court recognized, "words have meaning." Decision at 43. Thus, these cases cannot be the law in effect, and the Bankruptcy Court's reference to them as what must have been in the minds of the drafters is legal error. *Id*. at 44.

Additionally, the presumption that parties had the law in force at the time in mind is largely applied to contemporaneous statutes or regulations, as opposed to three circuit court decisions.[7] The three Courts of Appeals cases that were rendered by three courts in different districts, prior to the enactment of the superceding Bankruptcy Code, are by no means "settled" law deserving of such a presumption. Foreshadowing the First Circuit's analysis in this case,

---

[7]    Most of the cases cited by the Junior Trustees involve statutes or regulations – truly settled law. *See Skandia America Reinsurance Corp. v. Schenck*, 441 F. Supp. 715, 725 (S.D.N.Y. 1977) (a "long-standing statutory framework" dealing with the liquidation of an insolvent insurer's assets was incorporated into the contracts at issue); *Dinerman v. Nat'l Bank of North America*, 390 N.Y.S.2d 1002, 1006 (Sup. Ct. 1977) (considering a statutory limitation contained in the Uniform Commercial Code and holding that the alleged contract was not a contract but a stop payment order); *Dolman v. U.S. Trust Co. of NY*, 2 N.Y.2d 110, 115-16 (1956) (New York City regulation incorporated into lease to determine whether condemnation had occurred within meaning of lease provision).

law review articles at the time questioned the holdings in those cases and specifically queried

whether such holdings survived the enactment of § 510(a).  *See, e.g.,* App. Exh. 15 at 237 (1989)

(noting that the three 1970's Rule of Explicitness cases "may be inconsistent" with Section

510(a)).[8]

   The Junior Trustees, understandably reluctant to highlight the Bankruptcy Court's

reliance on the three 1970's cases, argue that "the 1983 Model Indenture, [] along with its 1971

predecessor, was among the most authoritative and widely known references for drafting and

interpreting indentures during the relevant time period." JT Br. at 17.  The evidence at trial,

however, told another story.  Mr. Landau, the Senior Trustee's expert, testified that lawyers

rarely used the model indentures, and that "lawyers that produced quantities of debt security

indentures, particularly the Wall Street firms, didn't pay any attention to the models.  They had

their own way of saying things that they produced issue after issue after issue.  They're referred

[to] as the cut and paste method. . . ."  App. Exh. 8 at 171:23-172:3 (11/17/2008).  The Junior

Trustees' expert Mr. Gadsden agreed with Mr. Landau that lawyers may use forms they used in

the past, and that might have "consequences."  *Id.* at 148:1-12 (11/18/2008).

   The Junior Trustees' caselaw does not raise the Model Indentures to the level of

law.  In a case relied on by the Junior Trustees, *In the Matter of Envirodyne Indus., Inc.*, 29 F.3d

301 (7th Cir. 1994), the parties disputed the meaning of an "X clause" in a subordinated

indenture, a type of clause which was "common in bond debentures" but had "no standard

---

[8]  The Junior Trustees' additional cases likewise do not support reading the three 1970's cases into the Junior Indentures.  *See Time Warner Entm't Co., L.P. v. Brustowsky*, 634 N.Y.S.2d 82, 83 (App. Div. 1995) (regulatory definition not determinative of ambiguous term); *Ott v. Ott*, 698 N.Y.S.2d 137, 138 (App. Div. 1999) (apparently applying presumption to determine that terms in divorce agreement referred to income reported on a W-2 form, without specifying the "applicable law" it referred to); *2 Tudor City Place Associates v. 2 Tudor City Tenants Corp.*, 924 F.2d 1247, 1251 (2d Cir. 1991) (incorporating federal statute into lease provision); *Bridge Capital Investors, II v. Susquehanna Radio Corp.*, 458 F.3d 1212, 1219 (11th Cir. 2006) (declining to read three FCC rulings into contract where rulings did not address precise issue at hand, and cases were factually distinguishable); *Brown v. Utica Mut. Ins. Co.*, 53 N.Y.S.2d 760, 768-69 (Sup. Ct. 1945) (reading Fair Labor Standards Act into employment contract).

wording." *Id.* at 306.  The parties agreed that extrinsic evidence should not be considered, but disagreed "about what counts as extrinsic evidence." *Id.* at 304.  Judge Posner agreed with the holders of senior indebtedness that extrinsic evidence *would* include testimony or documents concerning the drafters' intentions, "*rather than* scholarly literature on the purposes of the class of clause . . . such as the American Bar Foundation's *Commentaries on Model Debenture Indenture Provisions*." *Id.* (emphasis added).  The decision of the bankruptcy court upheld in *Envirodyne* distinguished Model Indentures from extrinsic evidence of intent, and allowed the use of the *Commentaries* "in the form of corroborative evidence, not extrinsic evidence" because its use "[was] limited to interpreting the nature of 'X' clauses in general not in explaining this particular clause." *In re Envirodyne Indus., Inc.*, 161 B.R. 440, 446 (Bankr. N.D. Ill. 1993). Here, the 1983 Model Indenture is useful only to the extent it represents the backdrop of the 1980s and the market intent that senior debt be paid post-petition interest. *See infra* at 16-17.  It is not the "law in effect at the time" by any means.

        In addition to erroneously relying on the three 1970's Rule of Explicitness cases and the 1983 Model Indenture as the governing law in effect, the Bankruptcy Court also relied on the principle that "interest on an obligation ceases upon the filing of an insolvency proceeding of whatever nature by the obligor."  Decision at 26.  The Bankruptcy Court, and the Junior Trustees, fail to recognize that this is not an absolute principle:  interest does not always cease upon the filing of an insolvency proceeding.  At the most basic level, both the Bankruptcy Court and the Junior Trustees recognize this fact – in their view, post-petition interest *would have been* recoverable had the drafters of the Junior Indentures used language that specifically provided that interest would not cease (in other words, had the drafters used the "magic words"

contemplated by the "Rule of Explicitness").[9]  Despite this, the Junior Trustees attempt to argue

that "the subordination provisions expressly define the scope of subordination in terms of

obligations actually borne by BNEC.  Since BNEC has no obligation to pay post-petition

interest, the Senior Note holders' subordination entitlement does not include post-petition

interest."  JT Br. at 49.  This statement presumes that post-petition interest is never available

which, as the Bankruptcy Court recognized, is not the law.  Moreover, the idea that post-petition

interest is available only to the extent available from the Debtor[10] is contradicted by the evidence

at trial.  Specifically, the Senior Trustee's expert Mr. Purcell conducted a survey of subordinated

indentures in the 1980's that included an indenture that specifically limited the recovery of post-

petition interest to what was available from the Debtor.  Specifically, that indenture states that

the senior debt:

> . . . shall be entitled to receive payment in full of all Senior Indebtedness
> (including any interest accruing subsequent to an event specified in
> Sections 6.01(5) and 6.01(6); provided that interest accruing during the
> pendency of any such proceeding is included only to the extent that the
> holders of such Senior Indebtedness are determined in such proceeding
> to be entitled to receive such interest from the Company). . . .

App. Exh. 13 at 28.  The drafters of this indenture limited the subordination to the obligations of

the company alone, which is markedly different from the Junior Indentures, which contain no

such limitation.   This exhibit was uncontroverted evidence that the market understood that

---

[9]    Decision at 26-27 ("If, under New York law interest on an obligation ceases upon the filing of an
insolvency proceeding unless the subordination agreements specifically provide otherwise, I may presume
that the parties drafted them with the understanding that this was the law and that the agreements would be
so construed.")

[10]   The Junior Trustees rely on *State of Rio de Janeiro v. E.H. Rollins & Sons, Inc., et al.*, 64 N.Y.S.2d 230
(Sup. Ct. 1946) to argue that New York courts construe subordination provisions to apply only insofar as
the senior creditor has an enforceable claim against the primary debtor.  This entirely overstates *E.H.
Rollins*, where the court ruled against the plaintiff holder of senior notes on statute of limitation grounds
and not the merits.  *See id.* at 232-33.  That is not the case here.

subordination to the payment of post-petition interest to senior creditors is not necessarily limited by the obligations of the debtor to pay post-petition interest.

## II.    THE BANKRUPTCY COURT FAILED TO CONSIDER RELEVANT EVIDENCE AND FAILED TO FOLLOW ESTABLISHED NEW YORK LAW GOVERNING AMBIGUOUS CONTRACTS

The Junior Trustees spend significant time trying to re-argue evidence.  The Junior Trustees' arguments are unavailing because (1) the Bankruptcy Court did not find their factual evidence conclusive and found that the Junior Trustees did not meet their burden with respect to custom and practice; (2) in any event, the Junior Trustees' arguments below and on appeal fail to appreciate the significant difference between the question of intent and legal enforceability; and (3) having found the extrinsic evidence inconclusive, the Bankruptcy Court erred by failing to follow New York law, which required resort to the plain meaning and *contra proferentem* rules.  Under New York law, which applies here, "[t]he appraisal of the value or existence of extrinsic evidence is for the court as a matter of substantive law."  *Uniroyal, Inc. v. Home Ins. Co.*, 707 F. Supp. 1368, 1375 (E.D.N.Y. 1988).[11]

---

[11]    The cases relied on by the Junior Trustees to support their contention that the clearly erroneous standard applies here are factually inapposite because both cases involved the use of parol evidence to determine whether letters of intent, under *Massachusetts law*, created binding contractual obligations.  *See Boston Car Co., Inc. v. Acura Auto. Div., Am. Honda Motor Co., Inc.*, 971 F.2d 811 (1st Cir. 1992); *Gel Sys. Inc. v. Hyundai Engineering & Constr. Co., Inc.*, 902 F.2d 1024 (1st Cir. 1990).  *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, et al., 241 F.3d 154 (2d Cir. 2001) is inapposite because in that case the parties "introduced considerable evidence to help resolve the ambiguity" including credible expert testimony that the ambiguous clause was a "widely recognized standard endorsement" in the insurance industry.  *Id.* at 174.  In *Squibb*, the court implicitly found that the trial court chose between two "permissible views of the evidence," unlike here, where the extrinsic evidence was inconclusive.  Moreover, these cases support a *de novo* review of the Bankruptcy Court's application of New York law.  The *Gel* court noted that "a finding that is predicated on or induced by, a misapprehension of law may always be reviewed."  *Gel Sys.*, 902 F.2d at 1027 (quotation omitted).  In *In re Carp*, 340 F.3d 15, 19 (1st Cir. 2003), another case cited by the Junior Trustees that does not involve an ambiguous contract, the First Circuit recognized that appellate courts must "determine the applicable law, and ensure that the trier properly applied it to the facts as found."

**A.    The Bankruptcy Court Found the "Factual Evidence" Unavailing and Found that the Junior Trustees did not Meet their Burden Of Showing A Custom and Practice**

The Bankruptcy Court found the direct evidence inconclusive.  The Junior Trustees claim that "the Bankruptcy Court simply noted that the expert witnesses did not have personal knowledge of the intent of the drafters of the Junior Indentures."  JT Br. at 13 n.13.  This is wrong and ignores key holdings by the Bankruptcy Court.  With respect to a letter written by Jay Levenson of Wachtell Lipton, the Bankruptcy Court held, "[t]his is as close to the drafters of the indentures as the evidence permits, and it is hardly helpful."  Decision at 32.  While the Junior Trustees claim that the testimony of John Cashin "belies the Senior Trustee's claim that the Bankruptcy Court found no illuminating direct or indirect evidence," JT Br. at 27, the Bankruptcy Court was not persuaded by Mr. Cashin, holding that Mr. Cashin, who "had been involved in trust administration for 33 years," provided "similar" testimony to that of Mr. Landau, who testified that no one had heard of the "Rule of Explicitness."  Decision at 35-36.

With respect to the Davis Polk Manual, the Bankruptcy Court first found that "there is no evidence that anyone involved with the drafting of the relevant subordination provisions ever had or referred to the Davis Polk Manual," and held that "[a]t best, it suggests the existence of an institutional knowledge at Davis Polk with respect to the Rule of Explicitness, but that is hardly conclusive.  I must cast my net wider."  Decision at 34.   The Junior Trustees never called a witness from Davis Polk to state that he or she used the Manual with respect to the Junior Indentures – the Davis Polk 30(b)(6) witness, Mr. Alan Dean, testified that Davis Polk did not have a recollection of reviewing the Davis Polk Manual in connection with the 1987 or 1989 Junior Indentures.  *Id*. at 28-30.  Nor did the Junior Trustees call a witness from Davis Polk who could state that the Manual represented the "institutional knowledge" of Davis Polk at the time.

This glaring failure of proof renders the Davis Polk Manual irrelevant to any determination of the drafter's intent.

The Bankruptcy Court expressly addressed the lack of custom and practice evidence concerning the language in indentures, a point the Junior Trustees do not meaningfully address. Because of its holding on custom and practice, the Bankruptcy Court was forced to admit that its holding was really not about intent, but rather that the Junior Trustees had shown that the language was not explicit enough to *entitle* the Senior Trustee to receive post-petition interest:

> I hold that the drafter of the Junior Indentures, had he or she wished to expand the subordination to include post-petition interest, would have added explicit language to accomplish that end. That being so, the Senior Trustee has not satisfied me that it is *entitled* to a dividend from the estate otherwise payable to the Junior Indenture holders. The Junior Trustees, on the other hand, have convinced me that the language used *did not entitle* the Senior Trustee to receive the dividend otherwise payable from the estate to the Juniors. [FN 149] The result is that the Trustee's motion is well taken and an order will enter granting the Motion for Order Authorizing a Fourth Interim Distribution.

> [FN 149] That being said, I note that the Junior Trustees failed to demonstrate that including language which satisfies the Rule of Explicitness was part of the custom and practice in the investment banking industry in the 1980s. To the contrary, all evidence indicates a lack of consistency or uniformity in the drafting of these instruments.

Decision at 49 & n.149 (emphasis added). Thus, is apparent that the court below did not find any evidence of an intent by the parties to exclude post-petition interest from the scope of the subordination provisions. It is also worth noting that these two portions of the Bankruptcy Court's decision highlight its internal inconsistency: the Bankruptcy Court first reasons that if the drafters intended to include post-petition interest, then they would have used more explicit language, and then in footnote 149, concludes that there was no custom or practice to include explicit language. *See id.*

14

B.    **In Considering the Evidence, The Bankruptcy Court (and the Junior Trustees) Conflate the Issues of Intent and Legal Enforceability and Ignore Evidence Going to the Question of Intent**

In their re-argument of the evidence before this Court, the Junior Trustees echo the Bankruptcy Court's failure to distinguish between the question of intent and the question of legal enforceability. First, a basis of the Bankruptcy Court's decision was the presumption that attorneys involved in the drafting of the Junior Indentures must have had the three 1970's "Rule of Explicitness" cases in mind – specifically, that it "defies belief" that attorneys at a major firm would "ignore three circuit court decisions. . ." Decision at 44. However, the Bankruptcy Court overlooked, and the Junior Trustees ignore, the fact that Davis Polk represented not only the underwriters who sought to market the Junior Debt in 1987, but also the underwriters who sought to market the Senior Debt in 1986.[12]  *See* App. Exh. 1, at ¶ 22; Reply App. Exh. 1, at Chptr. 7 Tr 000030.[13]  The assumption that the "Rule of Explicitness" was so pervasive and known by everyone involved in drafting indentures (both senior and junior) during the relevant time begs the question:  Did Davis Polk "defy belief" in 1986 when it supposedly failed to consider the impact of the "Rule of Explicitness" on the Senior Debt (*i.e.,* by failing to include language requiring compliance with the Rule), but not "defy belief" in 1987 when it supposedly failed to comply with the "Rule of Explicitness"?  Given this contradiction, it is absurd that the court can come to the conclusion that leaving the most explicit language out means the drafters did not intend for post-petition interest to be paid on the Senior Debt.  The only way to resolve this

---

[12]    In the Junior Trustees' words, regarding a typical junior debt offering, "underwriters have an affirmative interest in obtaining terms favorable to the junior note holders – which would include subordination provisions that do not encompass post-petition interest – to whom they market the subordinated debt." JT Br. at 24 (citing the Junior Trustees' expert witness Mr. Matthews).  And, the Junior Trustees admit that senior creditors desired post-petition interest.  *See id.* at 21 n.26.  So, underwriters marketing a senior debt offering would desire to include terms favorable to senior debt, such as post-petition interest.

[13]    "Reply App." refers to the Appendix of Exhibits to Appellant's Reply Brief, submitted herewith.  Exh. 1 is Joint Trial Exh. No. 20.

contradiction is to consider the expectations of the market or, failing that, apply *contra proferentem. See infra* at 19-23.

Second, with respect to market expectations, the Junior Trustees' argument that "[t]he Senior Trustee conflates the *desire* of some market participants (*i.e.,* primarily senior debt) to include post-petition interest within the purview of subordination clauses with *market expectation and understanding regarding what was needed to achieve that goal,*" JT Br. at 21 n.26 (emphasis in original), is wrong. Rather, the Junior Trustees impermissibly conflate what the market understood with what was legally sufficient. As the history of the Model Indentures demonstrates, these are not the same. The 1971 Model Indenture suggested language which provided only that "the holders of all Senior Debt shall first be entitled to receive payment in full of the principal thereof (and premium, if any) and interest due thereon . . . ." Decision at 38-39. Then, in 1974, 1975 and 1976, the *Time Sales, Kings Resources* and *Kingsboro* circuit decisions came down. In 1983, the Model Indenture evolved to add more explicit language, this time suggesting that the following be used: "holdings of Senior Debt shall be entitled to receive payment in full in cash of the principal of and interest (including interest accruing after the commencement of any such proceeding) to the date of payment on the Senior Debt . . ." *Id.* at 39-40. The Model Indenture evolved to preserve the market's expectation: if the market intended that senior debt not get post-petition interest, the 1983 Model Indenture would have suggested use of the language expressly found by *Time Sales, Kings Resources* and *Kingsboro* to not be sufficient to allow post-petition interest. Mr. Gadsden, the Junior Trustee's expert, admitted that the Model evolved to reflect the market, in testimony quoted by the Bankruptcy Court in its Decision:

> The market wanted seniors to get post-petition interest. . .and so to
> deliver that, the [Model Form] . . . gave the express language to deliver

the post-petition interest to the senior indebtedness if that form of
language was adopted.

Decision at 47.  Mr. Gadsden did not limit himself to "some market participants" – he testified

regarding the "market" itself.  Professor Carlson observed the market evolution and made the

distinction that the Bankruptcy Court did not: he observed that "standard forms represent typical

market expectations of debt covenants," and posited that "when the parties do not follow the

standard form but do not specifically reject it, the better view of the parties' agreement is a

definition of senior claim that includes postbankruptcy interest."  App. Exh. 14 at 988 n.41.   The

Junior Trustees' analysis ignores that intent is a very different question from whether the

language legally satisfied the "Rule of Explicitness."  The fact is, the parties could have intended

that the language satisfy the Rule and failed, which involves a different inquiry than whether the

language is "legally sufficient."  Indeed, the First Circuit expressly held that whether the

language satisfies the "Rule of Explicitness" was not the correct question.  364 F.3d at 361.

> ### C.    Alternatively, Under New York Law, If the Extrinsic Evidence is Not Helpful then the Matter Becomes a Question of Law Which Required the Factfinder to Reexamine the Plain Meaning and Construe the Contract Against the Drafters
>
> > #### 1.    *New York Law is Clear: If the Extrinsic Evidence Does Not Resolve the Ambiguity, then the Question Becomes One of Law*

Alternatively, once it evaluated the extrinsic evidence and found it to be

inconclusive, the Bankruptcy Court should have followed the fundamental principle of contract

law that, "in the absence of any relevant extrinsic evidence, any ambiguity in a written contract is

to be resolved by the court as a matter of law."  11 Williston on Contracts § 30:7 (4th ed. 1999).

The Junior Trustees' arguments are premised on a misunderstanding of New York's law of

contract interpretation.  *In re Avon Sec. Litig.*, No. 91 Civ. 2287, 2004 WL 3761563 (S.D.N.Y.

March 29, 2004), illustrates the roadmap used to interpret an ambiguous contract under New

York law.  In that case, the parties disagreed regarding whether the issuance of a special $3 stock dividend triggered an accelerated redemption provision in the corporation's amended articles of incorporation.  Finding the language to be ambiguous, the *Avon* court first noted that the parties' course of performance was "of little, if any, help" because there was no "practical interpretation of [the] contract by the parties to it for any considerable period of time."  *Id.* at *8.  The court then turned to "industry custom and practice" and found that the testimony "d[id] not really suggest anything about how the Accelerated Redemption provision . . . should be read."  *Id.*  The parties' testimony regarding their respective understandings of the provision was "not of much assistance, since they do not represent understandings communicated during the drafting process."  *Id.*[14]  Finally, the *Avon* court turned to the purpose of the stock offering, stating that "what most clearly indicates the meaning of the Accelerated Redemption provision…is consideration of the primary and dominant purpose of the [stock]".  *Id.* (internal quotations omitted).  The court deduced this purpose by looking at the Offering Circular and found that the "essence of the [stock issuance] was, in other words, a trade off, of capital appreciation for a substantially greater dividend."  *Id.* at *10.  The court considered the drafter's testimony regarding his intent in using the language and found it consistent with this purpose.  *Id.*  Accordingly, the court held that the plaintiff's interpretation of the contract was not supported by the evidence.  *Id.* at *11.

Here, there was no testimony from a drafter and the Bankruptcy Court found that the extrinsic evidence was not conclusive.  Therefore, the Bankruptcy Court should have

---

[14]    The parties also offered evidence discussing how the investment community interpreted the stock at the time of issue.  *Id.* at *9.  The court found that none of these reports addressed the question at issue.  *Id.*  The court similarly rejected evidence regarding the market price movement of the stock, which evidence the court found to be "as ambiguous as the language at issue."  *Id.*

construed the contract as a matter of law.  *See, e.g., Chase Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1073 (2d Cir.1996) ("Summary judgment may be proper in a contract action if . . .  the contract is ambiguous but there is no relevant extrinsic evidence of the parties' actual intent."); *Tom Doherty Assoc. Inc. v. Saban Entm't Inc.*, 869 F.Supp. 1130, 1138 (S.D.N.Y. 1994) ("if the extrinsic evidence does not resolve the equivocality of the language, the issue remains one of law"); *Chevron TCI, Inc. v. Talleyrand Assoc., LLC*, No. 03 Civ. 4043, 2003 WL 22977498, at *6 (S.D.N.Y. Dec. 19, 2003) ("even when a contract is ambiguous, if . . . the parties do not offer extrinsic evidence to resolve the ambiguity, the Court must construe the contract as a matter of law"); *Aviation Development Co. PLC v. C&S Acquisition Corp.*, No. 97 Civ. 9302, 1999 WL 46630, at *10 (S.D.N.Y. Feb. 2,1999) (court interpreted contract as a matter of law where "neither party offered evidence of any discussions, drafts, negotiations, etc. to support their *ipse dixit* readings" of the contract).[15]

2.    *The Bankruptcy Court Erred by Failing to Apply the Contra Proferentem Rule*

Because the Bankruptcy Court found that the extrinsic evidence presented at trial did not resolve the contractual ambiguity, as a matter of law, it should have applied the rule of *contra proferentem* and construed the ambiguous terms in the Junior Indentures against the Junior Trustees.  Courts routinely resort to this longstanding principle in this exact situation:

> Where there is ambiguity in the language of a written agreement, the Court may resort to extrinsic evidence to determine the meaning of the provision in question. However, where extrinsic evidence is not

---

[15]    Relying only on a treatise, the Junior Trustees' attempt to bring the Model Indenture in as "surrounding circumstances" determinative of the parties' intent. JT Br. at 49 n.55.  However, the selective quote ignores just what type of "surrounding circumstances" Williston refers to, including "whether one or both parties was new to the trade, whether either or both had counsel, and the nature and the length of their relationship, as well as their age, experience, education, and sophistication." 11 Williston on Contracts § 32.7 (4th ed. 1999).  Here, where there is no evidence that the drafters actually considered the Model, there is simply no basis to find that "surrounding circumstances" casts so wide a net to include model forms as evidence of the parties' intent, particularly where the trial court rejected the Junior Trustees' custom and practice evidence.

> dispositive, the ambiguity must be resolved *contra proferentem* against
> the party that drafted the provision.

*Schwartz v. Natwest Markets, PLC*, No. 99 CIV. 11010, 2001 WL 1006727, at *6 (S.D.N.Y.

Aug. 31, 2001) (citing New York law).  The doctrine provides that "where a contract contains an

ambiguity or contradiction or apparently inconsistent provisions, the 'contra proferentem'

principle requires that the contract be construed against the drafter."  *Metro. West Asset Mgmt. v.

Magnus Funding, Ltd.*, No. 03 Civ. 5539, 2004 WL 1444868, at *5 (S.D.N.Y. June 25, 2004).

        The cases cited by the Junior Trustees do not support the idea that a court is

precluded from applying the rule of *contra proferentem* when the parties here are sophisticated

business entities.  In *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 279 (2d

Cir. 2000), a case cited by the Junior Trustees, the Second Circuit remanded the case so the

district court could consider extrinsic evidence to shed light on an ambiguous phrase in an

insurance policy.  The Second Circuit took issue with the district court's rationale not to apply

*contra proferentem*, stating that "there is no general rule in New York denying sophisticated

businesses the benefit of contra proferentem," *id.*, and further directing that if extrinsic evidence

did not resolve the ambiguity on remand, "the district court should apply contra proferentem."

*Id.* at 280.  Indeed, New York courts have consistently applied this rule in cases involving

experienced and sophisticated businesses.  *See also Lazard Freres & Co. v. Protective Life Ins.

Co.*, 108 F.3d 1531, 1544-45 (2d Cir. 1997) (applying rule in breach of contract case involving

two sophisticated business entities – investment bank and insurance company – to interpret

provision that conditioned agreement on "the preparation, review and execution of

documentation" against bank as drafter); *Ocean Rig ASA v. Safra Nat'l Bank of New York*, 72 F.

Supp. 2d 193, 204 (S.D.N.Y. 1999) (applying rule to letter of credit issued by bank to offshore

oil drilling company as beneficiary to construe signature validation clause against bank).

The Junior Trustees' suggestion that the *contra proferentem* rule is inapplicable because the Junior Trustees were not the actual drafters is plain wrong. Assuming that the principal drafters were the lawyers acting for BNEC and the lawyers acting for the underwriters (JT Br. at 27), construing against the "drafter" means construing against the Junior Holders.[16] The Junior Debt "succeeded to the contractual rights and stands in the shoes of the underwriter who originally purchased [the Junior Debt]." *Broad v. Rockwell Intern. Corp.*, 642 F.2d 929, 948 n.20 (5th Cir. 1981); *see also Morgan Stanley & Co., Inc. v. Archer Daniels Midland Co.*, 570 F.Supp. 1529, 1541 (S.D.N.Y. 1983) (citing *Broad* for proposition that "purchaser of Debentures may stand in the shoes of the underwriters" as drafters); *United Rentals (North America), Inc. v. Keizer*, 355 F.3d 399, 409 (6th Cir. 2004) (applying *contra proferentem* against drafter's successor); *In re Meyer*, 331 B.R. 794, 797 (Bankr. E.D.Wis. 2005) (same). Similarly, New York authority, after finding ambiguity in a contract that was unresolved by extrinsic evidence, has construed the ambiguous term of the contract against the drafter where the party's agent or representative was the drafter.[17] *See Americorp Sec. v. Sager*, 656 N.Y.S.2d 762, 764

---

[16]    The Junior Trustees' position that the contract should not be construed against them is belied by their reliance on the testimony of Mr. Cashin, a representative of one of the then-Junior Trustees. *See* JT Br. at 47. While the Bankruptcy Court did not seem persuaded by Mr. Cashin, the Junior Trustees believe that his testimony to be the "only direct evidence . . . regarding the intent of the parties." *Id.* at 26-27. The Junior Trustees cannot have their cake and eat it too – if Mr. Cashin, a representative of one of the Junior Trustees, is the "only direct evidence" of intent, it is baffling that the Junior Trustees argue that there should not be a construction against the Junior Trustees.

[17]    The cases cited by the Junior Trustees to counter this point are inapposite. In *Rottkamp v. Eger*, 346 N.Y.S.2d 120 (N.Y. Sup. Ct. 1973), the court had to construe a contract relating to real property. The only witness to testify at trial was plaintiff and, at the conclusion of plaintiff's case, the defendant "made the usual motions and rested." *Id.* at 124. It is unclear whether defendant offered any evidence for the court to consider. Similarly, *Pacifico v. Pacifico*, 190 N.J. 258 (N.J. 2007), and *DaPuzzo v. Globalvest Mgmt. Co., L.P.*, 263 F. Supp. 2d 714 (S.D.N.Y 2003) are unhelpful because *Pacifico* deals with application of New Jersey law in a divorce action and the court in *DaPuzzo* did not apply *contra proferentem* because it found the contractual language and extrinsic evidence sufficient to construe the ambiguity, which is not the case here. Furthermore, *67 Wall Street Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245 (1975), *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669 (2d Cir. 1997), and *Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946 (2d Cir. 1965) do not stand for the proposition put forth by the Junior Trustees – in fact, the courts in those cases did not consider at all whether the rule applies only when it is clear that a party drafted the ambiguous term.

n.1 (N.Y. App. Div. 1997) (applying *contra proferentem* to interpret whether certain relief was excluded under arbitration agreement against petitioner and stating that "[t]he drafter of the arbitration agreement was actually Bear Stearns, Inc., petitioner's clearing agent. However, there is no dispute that petitioner utilized it as its own customer agreement, and that petitioner is the real party in interest here."); *Jeanette Coquette & Co., Inc. v. J.P. Original Corp.*, No. CV-92-5266, 1995 WL 313142 (E.D.N.Y. May 18, 1995) (court determined that "[a]lthough the bank and not Original presumably drafted the L/C, clearly any ambiguity should not be construed against Coquette," especially "given the ambiguity in the L/C and given that Original played a greater role in its preparation than did Coquette").

 The Junior Trustees argue that *contra proferentem* does not typically apply in the third party beneficiary context, because the cases relied on by the Senior Trustee, *Newman & Schwartz v. Aspludh Tree Expert Co., Inc.*, 102 F.3d 660 (2d Cir. 1996) and *Metro. West Asset Mgmt., LLC v. Magnus Funding, LTD*, 2004 WL 1444868 (S.D.N.Y. June 25, 2004), were at the motion to dismiss stage. However, the applicability of *contra proferentem* does not depend on the procedural stage of the litigation and the Junior Trustees cannot offer any evidence that would substantiate that argument.[18] In sum, the Junior Trustees have offered no compelling

---

[18] Contrary to the Junior Trustees' assertion, the court in *Newman* did not state or even consider that *contra proferentem* is only applicable at the motion to dismiss stage. The Second Circuit reversed the trial court's dismissal because it had "construed the facts and the law" against plaintiff, which had not drafted the employment agreement. The court found that this was not proper because, for purposes of the motion to dismiss, pleadings are to be liberally construed and, under the principle of *contra proferentem*, courts are to construe ambiguous contract terms against the drafter. *Id.* at 663. The court further stated that construing the facts and the law against plaintiff is "perhaps appropriate in the context of a Rule 56 motion for summary judgment . . . [but] constitute[s] reversible error at the 12(b)(6) stage of litigation." *Id.* Clearly the *Newman* court was simply describing the different legal standards in Rule 12(b)(6) and Rule 56 motions rather than creating a limitation on the applicability of *contra proferentem* based on the procedural stage of litigation. The Junior Trustees' reading of *Newman* is further belied by court decisions where the doctrine has been applied beyond the motion to dismiss stage. *See, e.g., Lazard Freres*, 108 F.3d at 1544 (applying *contra proferentem* on appeal from grant of summary judgment); *Ocean Rig*, 72 F. Supp. 2d at 204 (applying doctrine at summary judgment stage).

reason why any ambiguity in the Junior Indentures should not be construed against them, the

parties to the indentures, and in favor of the Senior Trustee, a third party beneficiary.

> 3. *The Subordination Provisions Should Have Been Given Their*
> *Plain Meaning Consistent With the Whole Contract*

The Junior Trustees misstate the Senior Trustee's arguments that, given that the

Bankruptcy Court was not swayed by the extrinsic evidence, the Bankruptcy Court must construe

the contract language by its plain meaning.  The Junior Trustees claim that "[g]iven that the

Bankruptcy Court and the First Circuit both previously found the Junior Indentures to be

ambiguous – and therefore lacking a plain meaning – the Bankruptcy Court remained

unpersuaded by this argument the second time around."  JT Br. at 13 n.14.  If that is the case,

then both the Junior Trustees and the Bankruptcy Court fail to appreciate New York law on

contract interpretation where, as here, the extrinsic evidence does not resolve the dispute.  Under

New York law, "[i]t is axiomatic that, in the absence of evidence to the contrary, words in a

contract carry their plain meaning."  *Tom Doherty Assoc.*, 869 F. Supp. at 1140;  *In re Delta Air*

*Lines, Inc.*, 381 B.R. 57, 64-65 (Bankr. S.D.N.Y. 2008); *Barnhardt v. Hudson Valley District*

*Counsel of Carpenters Benefit Funds*, 494 N.Y.S.2d 667, 669 (N.Y. App. Div. 1985).

Thus, having looked at the question of whether there was any conclusive extrinsic

evidence of the intent of the parties, the Bankruptcy Court should not have applied a "principle

of explicitness" that accomplished the very same result as the actual "Rule of Explicitness," but

rather, taken a close look at the plain meaning of the words "interest due or to become due."  In

ascertaining this question, the Bankruptcy Court should have looked to how those words were

used in the subordination provisions.  If the Bankruptcy Court had done so, the court would have

been able to, among other things, conclude that the phrase "interest due or to become due" was

meant to apply in bankruptcy because the words appear in a section addressing precisely what

happens upon the filing a bankruptcy petition.  In construing the plain language, the court should have looked at the contract as a whole.  The Junior Trustees do not meaningfully distinguish the Senior Trustee's arguments on this point.  The Senior Trustee argues that Section 12.03 of the Junior Indentures uses the phrase "interest due or to become due" to refer to that owed to the Senior Debt, and the phrase "interest . . . due and owing at the time" to refer to that owed to the Junior Debt.  The Junior Trustees' response is that this is a "passing description" of the Junior Debt.  JT Br. at 46.  However, Section 12.03's reference to the Junior Debt is hardly "passing;" rather, it defines the payment that can be made to the Junior Debt after the Senior Debt has been paid in full including "interest due or to become due."  *See* App. Exh. 5 at § 1203.

The Junior Trustees' arguments regarding the definition of "Senior Indebtedness" and Section 12.02 are unavailing, because those arguments rely on the concept of "explicitness" with respect to post-petition interest.  The Junior Trustees argue that "[i]f the concept of post-petition interest were to be addressed in the definition of Senior Indebtedness, the most logical place for it would have been in the initial phrase that actually defines the elements of Senior Indebtedness."  JT Br. at 43-44.  However, the "initial phrase" defines Senior Indebtedness as including "the principal of, premium (if any), *and interest. . .*" App. Exh. 5 at § 101 (emphasis added).  Thus, interest is included in the definition of Senior Indebtedness, which would not include "such indebtedness as is by its terms expressly stated to be not superior in right of payment to [the Junior Notes]."  *Id.*  The Junior Trustees admit that, with respect to Section 12.02, "the Senior Trustee's argument begs the question of whether the holders of Senior Debt have received their legal entitlement – if so, there is no event of default related to the interest payment."  JT Br. at 44.  However, the question is not one of legal entitlement: where a court has found the extrinsic evidence inconclusive, the inquiry moves to the plain language and other

parts of the subordination provisions, such as 12.02 and the definition of "Senior Indebtedness," for guidance in determining the meaning of "interest due or to become due."[19]

## **CONCLUSION**

For the reasons set forth above, this Court should reverse and enter an order denying the Chapter 7 Trustee's Motion for Order Authorizing A Fourth Interim Distribution and ordering that the Senior Trustee be paid post-petition amounts due to it from the funds remaining in the BNEC estate.

Dated:  September 8, 2009          Respectfully submitted,

By: /s/ Douglas B. Rosner
Douglas B. Rosner, Esq. (BBO #559963)
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, MA  02110
Tel:    (617) 482-1776
Fax:    (617) 574-4112
Email: drosner@goulstonstorrs.com

-and-

William A. Escobar (*pro hac vice*)
Sarah L. Reid (*pro hac vice*)
Alison L. MacGregor (*pro hac vice*)
101 Park Avenue
New York, NY  10178
Tel:  (212) 808-7800
Fax:  (212) 808-7897

*Attorneys for Appellant*

---

[19] The Junior Trustees argue that "[t]he subordination provisions of the Junior Indentures incorporate the defined term 'Senior Indebtedness;' yet the First Circuit still found them ambiguous."  JT Br. at 43. This is an overbroad generalization that ignores the fact that the First Circuit specifically identified the words "interest due or to become due" as "lacking in certitude" and remanded for fact-finding on the intent behind those words.  364 F.3d at 364.