UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: BANK OF NEW ENGLAND CORP., | * | Case No. 91-10126 (WCH) |
| | * | (Chapter 7) |
| Debtor, | * | |
| | * | |
| ⸻⸻⸻⸻⸻⸻⸻ | * | |
| | * | |
| HSBC BANK USA, NAT'L A'SSN, | * | |
| as Indenture Trustee and as Successor | * | |
| Indenture Trustee to JPMorgan Chase Bank | * | |
| f/k/a The Chase Manhattan Bank, as | * | |
| Indenture Trustee, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Civil Action No. 09-10829-JLT |
| | * | |
| BANK OF NEW YORK TRUST CO., | * | |
| National Association, as Indenture Trustee, | * | |
| and U.S. Bank, National Association, as | * | |
| Indenture Trustee, | * | |
| | * | |
| Appellees, | * | |
| | * | |
| and | * | |
| | * | |
| Bank of New England Corporation, Dr. | * | |
| Ben S. Branch, Chapter 7 Trustee. | * | |

MEMORANDUM

March 15, 2010

TAURO, J.

Presently at issue is an appeal from a decision of the Bankruptcy Court dated April 10,

2009.[1]  For the following reasons, the judgment of the Bankruptcy Court is AFFIRMED.

─────────────────

[1] In re Bank of New Eng. Corp., No. 91-10126-WCH, 404 B.R. 17 (Bankr. D. Mass. April 10, 2009).

The Bank of New England Corporation ["BNE"] issued six separate issues of indenture debt, three described as "Senior Indentures" and three described as "Junior Indentures," prior to filing a voluntary petition under Chapter 7 of the Bankruptcy Code in 1991.[2]   The Chapter 7 Trustee for BNE (the "BNE Trustee"), through three interim distributions, paid out all allowed claims for principal and pre-petition interest on the Senior Indentures to the Senior Indenture Trustee.  The BNE Trustee then proposed to pay claims on the Junior Indentures in the next distribution to the Junior Indenture Trustees.  The Senior Indenture Trustee objected, arguing that holders of the Senior Indentures were first entitled to the payment of post-petition interest, resulting in this litigation.

The Bankruptcy Court ruled in favor of the Junior Indenture Trustees.  On appeal, the district court, applying rules of contract interpretation pursuant to New York law (which governs both the Junior and Senior Indentures), affirmed the Bankruptcy Court's ruling, on the grounds that "it is clear that for a claim to post-petition interest to survive the Rule of Explicitness, a subordination agreement must specifically reference the entitlement of the Senior Debt holders to such interest."[3]  The "Rule of Explicitness" is an equitable doctrine that, "[i]n its simplest form ... required that a subordination agreement show clearly 'that the general rule that interest stops on the date of the filing of the petition is to be suspended.'"[4]

---

[2]The following facts are taken from the decision of the Bankruptcy Court, In re Bank of New Eng. Corp., No. 91-10126-WCH, 404 B.R. 17 (Bankr. D. Mass. April 10, 2009) [hereinafter referred to as "Bankr. Dec'n"].

[3]HSBC Bank USA v. Bank of New Eng. (In re Bank of New Eng.), 295 B.R. 419, 424 (D. Mass. 2003).

[4]Id. at p. 362 (quoting Matter of Time Sales Fin. Corp., 491 F.2d 841, 844 (3d Cir. 1974)).

2

The Senior Indenture Trustee then appealed the decision of the district court. At that time, the First Circuit addressed the precise question at the center of the dispute now before this court: "[what] priority (if any) . . . attaches to payment of post-petition interest on indebtedness that benefits from the contractual subordination of other indebtedness."[5]

The First Circuit, reviewing the legal conclusions of the lower courts *de novo*, found that the manner in which the lower courts and litigants framed the question—"whether the language of the subordination provisions satisfies the Rule of Explicitness"[6]—to be incorrect. Vacating the judgment of the district court, the First Circuit found that Section 510(a) of the Bankruptcy Code, which provides that "[a] subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law,"[7] renders the Rule of Explicitness a "dead letter" for the purposes of this case, because "states are not free to adopt rules of contract interpretation that apply only in bankruptcy."[8]

The First Circuit then applied general principles of contract interpretation to the dispute, applying New York law. First, the First Circuit determined that the disputed provisions in the Junior and Senior Indentures were "subordination clauses, pure and simple."[9] Second, it attempted to establish the meaning and effect of the relevant provisions. That analysis, the First

---

[5]HSBC Bank USA v. Branch (In re Bank of New Engl. Corp.), 364 F.3d 355, 359 (1st Cir. 2004).

[6]HSBC Bank USA v. Branch (In re Bank of New Engl. Corp.), 364 F.3d at 361.

[7]11 U.S.C. § 510(a).

[8]HSBC Bank USA v. Branch (In re Bank of New Engl. Corp.), 364 F.3d at 359.

[9]Id. at p. 366.

Circuit posited, required that the court first determine whether the provisions relating to the

priority of post-petition interest are ambiguous under New York law.  In doing so, the First

Circuit relied on the following language from the New York Court of Appeals:

> Contracts are not to be interpreted by giving a strict and rigid meaning to general
> words or expressions without regard to the surrounding circumstances or the
> apparent purpose which the parties sought to accomplish. The court should
> examine the entire contract and consider the relation of the parties and the
> circumstances under which it was executed. Particular words should be
> considered, not as if isolated from the context, but in the light of the obligation as
> a whole and the intention of the parties as manifested thereby. Form should not
> prevail over substance, and a sensible meaning of words should be sought.[10]

Applying those guidelines, the First Circuit then found the pertinent language from the

Junior Indentures—"requir[ing] full payment of 'interest due or to become due'"[11]—to be

"lacking in certitude".[12]   To resolve this ambiguity, the First Circuit held that a "a contextual

examination of the parties' intent" was required, "taking full account of the surrounding facts and

circumstances."[13]   It also concluded that "it is impossible to glean . . .[the parties' intent] from the

language and structure of the instrument alone."[14]   On that basis, the case was remanded to the

Bankruptcy Court "for a finding on the parties' intent vis-a-vis post-petition interest."

Pursuant to the instructions in the First Circuit opinion, the Bankruptcy Court held a

---

[10]Id. at p. 366 (quoting William C. Atwater & Co. v. Panama R. Co., 246 N.Y. 519, 159
N.E. 418, 419 (N.Y. 1927)).

[11]Id. at p. 367.

[12]Id.

[13]Id.

[14]Id. at p. 368.

4

three-day trial on the question of the parties' intent and issued a decision holding that drafters of the Junior Indentures did not intend to permit holders of the Senior Indentures to receive post-petition interest prior to payment of the subordinated BNE debt.  Unsure precisely how to proceed, the Bankruptcy Court ultimately determined it was appropriate to treat the dispute as one of interpleader.  As a result, the Bankruptcy Court required that each party "show his or her entitlement to the disputed funds by a preponderance of the evidence," and informed the parties that they "must recover on the strength of their own title, rather than on the weakness of that of the adversary."[15]

This court reviews the decision of the Bankruptcy Court for clear error.[16]  That standard requires that the Bankruptcy Court's factual findings be supported by a "reasonable view of the record."[17]

The Bankruptcy Court's task on remand—a "differential factfinding . . . on the parties' intent vis-a-vis post-petition interest"—proved difficult to fulfill because little firsthand evidence on the intent of the drafters of the Junior Indentures exists.  The parties were unable to locate any

_____

[15]Bankr. Dec'n at pp. 17-18 (citations omitted).

[16]See Boston Car Co. v. Acura Auto. Div., American Honda Motor Co., 971 F.2d 811, 815 (1st Cir. 1992) (where "contract provision is ambiguous, 'a finding as to the meaning of a writing will be reviewed under the clearly erroneous standard'") (quoting Gel Systems, Inc. v. Hyundai Eng. & Constr. Co., 902 F.2d 1024, 1027 (1st Cir. 1990)).

[17]See Gannett v. Carp (In re Carp), 340 F.3d 15, 22 (1st Cir. 2003) ("Under the clear error standard, the trier's findings of fact and the conclusions drawn therefrom ought not to be set aside 'unless, on the whole of the record, we form a strong, unyielding belief that a mistake has been made.' It follows that if the bankruptcy court's findings are supportable on any reasonable view of the record, we are bound to uphold them. " ) (internal citations omitted).

persons actually involved in the drafting of the Junior Indentures.[18]  Testimony by"[t]wo attorneys peripherally involved in the drafting process"[19] proved "hardly helpful" in the Bankruptcy Court's estimation, and documents introduced to inform their testimony turned out to be either "inconclusive"[20] or uninformative.

Given the dearth of direct evidence on the drafting process, the Bankruptcy Court relied on expert testimony to discern the likely intent of the drafters.  In doing so, the Bankruptcy Court properly looked to evidence concerning what that the parties to the Junior Indentures would have considered to be the law on post-petition interest at the time.  That analysis necessarily involved a review of what the Bankruptcy Court and the parties referred to as  "the three cases" establishing the Rule of Explicitness: In re Time Sales Finance Corp.,[21] Bankers Life Co. v. Manufacturers Hanover Trust Co. (In re Kingsboro Mortg. Corp.),[22] and In re King Resources Co.[23]  It was proper for the court to consider the parties' likely perception of the law at the time because it is clear that, under New York law, "unless a contract provides otherwise, the law in force at the time the agreement is entered into becomes as much a part of the agreement as though it were expressed or referred to therein, for it is presumed that the parties had such law in contemplation

---

[18]Bankr. Dec'n at p. 19.

[19]Id. at p. 28.

[20]Id. at p. 33.

[21]491 F.2d 841, 844 (3d Cir. 1974).

[22]514 F.2d 400 (2d Cir. 1975).

[23]528 F.2d 789 (10th Cir. 1976).

when the contract was made and the contract will be construed in the light of such law."[24]

The Bankruptcy Court first acknowledged the testimony of an expert, Gilbert E. Matthews, a career investment banker who worked in the industry in the mid-1980s, who testified that "in that time frame, [the three cases] would have been part of the knowledge base that the investment community had."[25]

The Bankruptcy Court then considered the testimony of James Gadsden, a lawyer with 34 years of experience providing services to corporate trust service providers. Gadsden was an active member of the American Bar Association Trust Indenture Subcommittee of the Business Bankruptcy Committee in the mid-1980s. He testified that, in order for the Senior Indentures to stake a claim to post-petition interest at the time, "the three Court of Appeals decisions . . . and actually the words of the document . . . needed to convey to the person who was going to acquire the subordinated debt that the rule that interest on the senior indebtedness would cease on the bankruptcy case was not going to apply."[26]

The Bankruptcy Court also relied on testimony from John J. Cashin, the Rule 30(b)(6) representative of Chase Bank USA, who specifically remembered receiving a draft of the 1989 Junior Indenture. According to Cashin, based upon his experience on creditors committees throughout 33 years in trust administration, holders of the Senior Indentures would be entitled to

---

[24]Dolman v. United States Trust Co., 2 N.Y.2d 110, 116 (N.Y. 1956). It was not necessary for the Bankruptcy Court to disregard a footnote in the First Circuit opinion citing this language simply because, as Appellant suggests, it "fits the very definition of dicta"; controlling New York precedent, not the pertinent footnote, guided the Bankruptcy Court's analysis.

[25]Bankr. Dec'n at p. 42 (quoting Trial Tr. 42:18-23).

[26]Id. at p. 46 (quoting Trial Tr. 116:18-117:2).

"the interest and principal due to the senior holders up to and including the petition, but not post-petition interest."[27]

In its analysis, the Bankruptcy Court also weighed a manual used to train lawyers at Davis, Polk & Wardwell, counsel to the underwriters on the 1987 and 1989 offerings. The Bankruptcy Court first emphasized that this evidence was "hardly conclusive," because "there is no evidence that anyone involved with the drafting of the relevant subordination provisions ever had or referred to" the manual. Notwithstanding that fact, the Bankruptcy Court found that the manual "suggest[ed] the existence of an institutional knowledge at Davis Polk with respect to the Rule of Explicitness."

In contrast, the Bankruptcy Court did not credit testimony offered by Senior Indenture Trustee's expert, William H. Purcell, on the grounds that "[h]e trie[d] to prove too much."[28] For his part, Purcell opined that an investment banker in the mid-1980s would have understood the phrase "paid in full" (another term used in the indentures) had only one meaning: that "you would ... be paid the full amount of interest that was due on [the] principal prior to it being repaid,"[29] regardless of the filing of a bankruptcy petition and even in the face of explicit contractual language to the contrary. The Bankruptcy Court found that Purcell's view that "the senior debt is entitled to payment in full under all circumstances and without regard of the wording of any subordinating instrument" was " inconsistent with the law, the common law, the Bankruptcy Act

---

[27]Id. at p. 36.

[28]Id. at p. 42.

[29]Id. at p. 37.

8

and Bankruptcy Code, as well as common sense."[30]

After evaluating all the evidence, the Bankruptcy Court concluded "[w]hen our unknown drafter undertook to prepare the Junior Indentures, he or she must be presumed to have understood that, if [BNE] became the subject of a bankruptcy or other insolvency proceeding, the Senior Debt's right to interest would cease."[31]  It therefore held that the Junior Indenture Trustees successfully established that "investment bankers in the 1980s understood that a creditor's right to interest ceased on the filing of bankruptcy (or, as I should have shown, upon the implementation of other liquidating schemes)," and that the Senior Indenture Trustee, for its part, did not satisfy its burden of establishing an entitlement to post-petition interest.

The Bankruptcy Court decision, in addition to evaluating documents and testimony relating to the parties' intent, also expounds on the vitality of the Principle of Explicitness as a matter of New York state law.  To that extent, the Bankruptcy Court's decision goes beyond the mandate of the First Circuit on remand and is not essential to its holding with respect to the intent of drafters of the Junior Indentures.  For that reason, it is dicta.[32]

Because the Bankruptcy Court's factual findings are supported by a reasonable view of

---

[30]Id. at pp. 42-43.

[31]Id. at p. 43.

[32]See Arcam Pharm. Corp. v. Faria, 513 F.3d 1, 3 (1st Cir. 2007) (dictum "comprises observations in a judicial opinion or order that are 'not essential' to the determination of the legal questions then before the court.") (Municipality of San Juan v. Rullan, 318 F.3d 26, 29 n.3 (1st Cir. 2003)).

the record, this court hereby orders that the judgment of the Bankruptcy Court is AFFIRMED.

AN ORDER HAS ISSUED.

                                    __/s/ Joseph L. Tauro_____
                                    United States District Judge